## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

DAWN TOLEN,

     Plaintiff,

v.                                                                2:23-cv-993-NPM

COMMISSIONER OF SOCIAL SECURITY,

     Defendant.

---

## OPINION AND ORDER

Plaintiff Dawn Tolen seeks judicial review of a denial of Social Security disability benefits. The Commissioner of the Social Security Administration filed the transcript of the proceedings (Doc. 11),[1] Tolen filed an opening brief (Doc. 15), and the Commissioner responded (Doc. 16). As discussed in this opinion and order, the decision of the Commissioner is affirmed.

## I.  Eligibility for Disability Benefits and the Administration's Decision

### A.  Eligibility

The Social Security Act and related regulations define disability as the inability to do any substantial gainful activity by reason of one or more medically determinable physical or mental impairments that can be expected to result in death or that have lasted or can be expected to last for a continuous period of not less than

---

[1] Cited as "Tr." followed by the appropriate page number.

twelve months.[2] Depending on its nature and severity, an impairment limits exertional abilities like walking or lifting, nonexertional abilities like seeing or hearing, tolerances for workplace conditions like noise or fumes, or aptitudes necessary to do most jobs such as using judgment or dealing with people.[3] And when functional limitations preclude both a return to past work and doing any other work sufficiently available in the national economy (or an impairment meets or equals the severity criteria for a disabling impairment as defined in the regulatory "Listing of Impairments"), the person is disabled for purposes of the Act.[4]

## B.    Factual and procedural history

On November 6, 2019, Tolen applied for supplemental security income. (Tr. 21, 128, 413, 462). She asserted an onset date of July 13, 2019, alleging disability due to the following: "messed up discs, referred to surgeon, left hand goes numb, early onset dementia," bipolar disorder, depression, anxiety, panic attacks, seizures, diabetes, high blood pressure, mitro-valve prolapse, "fluid around heart," pulmonary thrombosis, and severe memory loss. (Tr. 128, 367, 369, 405, 413). As of the alleged

---

[2]    *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3); 20 C.F.R. § 416.905.

[3]    *See* 20 C.F.R. §§ 416.913(a)(2)(i)(A)-(D) (discussing the various categories of work-related abilities), 416.922(b) (providing examples of abilities and aptitudes necessary to do most jobs), 416.945(b)-(d) (discussing physical, mental, and other abilities that may be affected by an impairment).

[4]    *See* 20 C.F.R. § 416.911(a).

onset date, Tolen was 47 years old, with a high school education. (Tr. 34, 406, 413). Tolen has no past relevant work, but testified she cared for her children, grandchildren, and elderly father. (Tr. 24, 406, 430).

On behalf of the administration, a state agency[5] reviewed and denied Tolen's application initially on September 25, 2020, and upon reconsideration on February 8, 2021. (Tr. 154). At Tolen's request, Administrative Law Judge (ALJ) Ryan Johannes held a hearing on July 1, 2021, and issued an unfavorable decision on August 9, 2021. (Tr. 155, 158-71). However, the Appeals Council remanded the case because the ALJ failed to hold a proffered supplemental hearing, an offer Tolen had accepted. (Tr. 180).

On remand, ALJ Johannes issued another unfavorable decision finding Tolen not disabled. (Tr. 18-36). Tolen's timely request for review by the administration's Appeals Council was denied. (Tr. 1-3). Tolen then brought the matter to this court, and the case is ripe for judicial review.

## C.    The ALJ's decision

The ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. 20 C.F.R. § 416.920(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an

---

[5]    In Florida, a federally funded state agency develops evidence and makes the initial determination whether a claimant is disabled. *See* 42 U.S.C. § 421(a); 20 C.F.R. § 416.903(a).

> impairment listed in the Listing of Impairments; (4) if not, whether the
> claimant has the residual functional capacity ("RFC") to perform his past
> relevant work; and (5) if not, whether, in light of his age, education, and work
> experience, the claimant can perform other work that exists in significant
> numbers in the national economy.

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. § 416.920(a)(4).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. § 416.1400(b). Unlike judicial proceedings, Social Security Administration hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id.* Indeed, "at the hearing stage, the commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id.* (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id.* (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is relieved of the burden of production during

step five as to whether there are enough jobs someone like the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *See* 20 C.F.R. § 416.912 (providing that the claimant must prove disability); *see also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (noting the regulations "place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work"). In short, the "overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant." *Washington*, 906 F.3d at 1359 (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

At step one of the evaluation, the ALJ found Tolen had not engaged in substantial gainful activity since November 6, 2019, the application date. (Tr. 21). At step two, the ALJ characterized Tolen's severe impairments as: cervical degenerative disc disease; lumbar degenerative disc disease; migraines; periodic limb movement disorder; obesity; and posttraumatic stress disorder (PTSD). (*Id.*). The ALJ also determined that Tolen suffered from non-severe impairments such as: chest pain; "chronic pain NEC"; myofascial pain; opioid dependance; asthma; snoring; "TIA NOS"; mitral-valve prolapse; pulmonary embolism; thrombosis; seizures; mild cognitive impairment; hypertension; hyperglycemia; and occipital neuralgia. (Tr. at 21-22). At step three, the ALJ determined Tolen did not have an

impairment or combination of impairments that met or medically equaled the severity of an agency-listed impairment. (Tr. 22).

As a predicate to step four, the ALJ arrived at the following RFC:

> The claimant maintains the following residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant is able to occasionally climb stairs and ramps, but never climb ladders and scaffolds; occasionally balance, stoop, kneel, and crouch; never crawl; occasionally operate foot controls; frequently reach, handle, and finger with the dominant left upper extremity; avoid concentrated exposure vibration; avoid all moving mechanical parts and unprotected heights; face-to-face contact needed for communication in an environment where the noise code is four as defined by the SCO as loud; understand, remember, and carryout simple repetitive tasks; can concentrate, attend, and persist on tasks for two-hour periods and can adapt to change in the workplace; work that is not fast paced with no work with assembly line/conveyor belts; and occasional interaction with supervisors, coworkers, and the general public.

(Tr. 25). Given an absence of any past relevant work, the ALJ proceeded to step five and found that Tolen could perform work for which a significant number of jobs exist in the national economy. (Tr. 34-35). In support, a vocational expert opined during the ALJ hearing that three occupations represent the kinds of jobs that an individual of Tolen's age, education, work experience, and RFC can perform:

- *Routing Clerk*, DOT #222.687-022, light; SVP 2, with 60,000 jobs in the national economy;

- *Cleaner*, DOT # 323.687-014, light; SVP 2, with 235,000 jobs in the national economy; and

- *Marker*, DOT # 209.587-034, light; SVP 2, with 233,000 jobs in the national economy.[6]

---

[6]    The DOT numbers refer to the Dictionary of Occupational Titles and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and

(Tr. 35). Thus, for purposes of the Act, the ALJ concluded Tolen was not disabled from November 6, 2019, the application date, through February 13, 2023, the date of decision. (Tr. 36).

## II.    Analysis

Tolen's appeal presents two issues for review:

(1)    whether the ALJ committed reversible error by failing to consider Tolen's "chronic pain syndrome" at step two or anywhere in his sequential analysis; and

(2)    whether substantial evidence supports the ALJ's conclusion that the intensity, persistence, and limiting effects of Tolen's impairments were not as disabling as alleged, and thus, did not preclude simple, light-duty work involving occasional interaction with others.

### A.    Standard of review

The court "may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021). While the court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the court's review of the administration's

---

skill levels. Exertion refers to the work—in a purely physical sense—that the job requires, and it is divided into five categories: sedentary, light, medium, heavy, and very heavy. Skill refers to the time it takes—during or before a job, such as prior experience or education—to develop necessary abilities, and it is divided into three categories: unskilled, semiskilled, and skilled. The "SVP" (Specific Vocational Preparation) provides further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled; SVP 3 and 4 are semiskilled; and SVP 5 through 9 are skilled.

decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id*. at 1157. In other words, a "presumption of validity attaches" to the ALJ's factual findings. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). And if supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

**B.    The ALJ did not commit reversible error by failing to consider Tolen's "chronic pain syndrome" in his sequential analysis.**

Tolen argues that the ALJ failed to consider her "chronic pain syndrome" (CPS), at step two or anywhere in his sequential analysis, as well as how this syndrome compounds her pain from other impairments. (Doc. 15 at 16-17). This

error, according to Tolen, requires remand.

At step two of the sequential analysis, the ALJ must "consider the medical severity of [the claimant's] impairment(s)." 20 C.F.R. § 416.920(a)(4)(ii). A severe impairment is one that significantly limits the claimant's ability to do basic work activities. *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). "The claimant has the burden to establish a severe impairment or combination of impairments." *Howard v. Commissioner*, No. 23-13701, 2024 WL 4381008, *3 (11th Cir. Oct. 3, 2024). The claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings. And unless an impairment is "expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 416.909. The administration calls this "the duration requirement." *Id.*

"This step acts as a filter; if no severe impairment is shown the claim is denied, but the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two." *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). Thus, the finding of a single severe impairment satisfies step two. *See id.* And the failure to find additional severe impairments is harmless error so long as the ALJ considers all of the claimant's impairments (severe and non-severe) in combination throughout the

rest of the sequential evaluation process. *See, e.g., Freeman v. Comm'r Soc. Sec. Admin.*, 593 F. App'x 911, 914-15 (11th Cir. 2014).

Here, at step two, the ALJ found Tolen had the following severe impairments: cervical degenerative disc disease; lumbar degenerative disc disease; migraines; periodic limb movement disorder; obesity; and posttraumatic stress disorder (PTSD). (Tr. 21). And the ALJ also found that Tolen suffered from several non-severe impairments, including "chronic pain NEC and myofascial pain," noting that these conditions were non-severe because Tolen had "little specific follow-up treatment." *Id.* Then, the ALJ went on to say that "[r]egardless, any limitations [with respect to chronic and myofascial pain] are well supported in the RFC." *Id.*

Even so, Tolen attacks what she perceives as the ALJ's failure to acknowledge her "chronic pain syndrome" anywhere throughout his sequential analysis. This argument lacks merit because Tolen's CPS does not meet the duration requirement, and therefore, was not germane to the ALJ's analysis. *See Donnellan v. Comm'r of Soc. Sec.*, No. 2:22-cv-542-NPM, 2024 WL 1298819, *8 (M.D. Fla. Mar. 27, 2024) (finding that "an ALJ need not discuss an opined limitation unless it was expected to last a year or more."). To be sure, the record evidence shows that in *October 2020*, Tolen was first diagnosed as having CPS, which was noted as "stable." (Tr. 1204). However, the treating provider opined that CPS "is often a diagnosis of exclusion when other pain disorders are not identified. If appropriate lab tests and diagnostic

imaging is normal, Chronic Pain Syndrome may be the cause of your symptoms. Tests may be needed to identify the source of pain." *Id.* Tolen's CPS diagnosis was noted again in November and December 2020, and in February 2021, with Tolen's pain being noted as "stable" and that she was "able to function well on current regiment." (Tr. 1217, 1221, 1233-34). But by May 2021, approximately *seven months* later, Tolen was no longer diagnosed with CPS; rather, she received a more specific diagnosis of pain associated with lumbar and cervical radiculopathy—the very impairments that the ALJ found qualified as "severe." (Tr. 21, 1617-19, 1623-24, 1631, 1639-42, 1665-68).

Undeterred, Tolen asserts that the ALJ's finding that her "chronic pain NEC" was non-severe is illogical in light of his finding that her cervical and lumbar degenerative conditions were severe. Even if true, Tolen has not shown that any error the ALJ committed at step two was more than harmless. As discussed above, the ALJ determined Tolen had multiple severe impairments along with non-severe impairments (i.e., chronic pain), which the ALJ considered in combination throughout the rest of the sequential process. Indeed, the ALJ stated that he considered "all [of Tolen's] medically determinable impairments, severe and non-severe, in the formation of the residual functional capacity findings." (Tr. 22). Accordingly, the ALJ did not commit any reversible error.

### C. The ALJ properly considered the effects of Tolen's impairments, and the RFC is supported by substantial evidence.

Tolen argues that because the ALJ discounted certain medical opinions of record and her statements about her severe limitations, the ALJ failed to fully appreciate the "total limiting effects" of her severe impairments. (Doc. 15 at 14-15). According to Tolen, the RFC is based upon the ALJ's defective analysis and is not logically bridged to the record. (Doc. 15 at 16). Thus, Tolen asserts the RFC is not supported by substantial evidence. (Doc. 15 at 4).

A claimant's RFC is the most she can still do despite her limitations. 20 C.F.R. § 416.945(a). To determine a claimant's RFC, an ALJ must "consider the limiting effects of all [the claimant's] impairment(s), even those that are not severe[.]" 20 C.F.R. § 416.945(e). In other words, "[a]n RFC determination is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite h[er] impairments." *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). "In making this holistic assessment, the ALJ considers evidence such as the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; the type, dosage, effectiveness, and side effects of any medication or other treatment the claimant takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; any measures the claimant uses or has used to relieve pain or symptoms; and any other factors concerning the claimant's

functional limitations and restrictions." *Cnossen v. Comm'r of Soc. Sec.*, No. 2:22-cv-574-KCD, 2023 WL 5013394, *4 (M.D. Fla. Aug. 7, 2023).

Contrary to Tolen's claim, the record shows that the ALJ considered the "total limiting effects" of her impairments and the ALJ's findings are supported by substantial evidence. The ALJ considered Tolen's testimony concerning the intensity, persistence, and limiting effects of her physical and mental impairments that caused difficulty with sitting, standing, walking, lifting, memory, concentration, adapting, and interacting with others. (Tr. 26, 53, 55, 426, 434, 458, 577, 606, 689, 698, 720, 723). And while the ALJ found that Tolen's medically determinable impairments could reasonably be expected to cause the alleged symptoms, the ALJ concluded that Tolen's statements about the effects of the symptoms were not supported by the treatment history, objective medical findings, and other evidence of record. (Tr. 26). Then the ALJ outlined the evidence that supports the RFC—nothing more is required.

Still, Tolen argues that the medical opinion evidence and her statements establish greater limitations than the ALJ's RFC. Specifically, Tolen asserts that the ALJ failed to properly consider the medical opinions from Barbara Violette, APRN, and Drs. Paula Bowman, Dareld Morris, and Cheryl Kasprzak. (Doc. 15 at 18-22).

"A medical opinion is a statement from a medical source about what the claimant can still do despite her impairment(s) and whether she has one or more

impairment-related limitations or restrictions." 20 C.F.R. § 416.913(a)(2). When

confronted with a medical opinion, an ALJ must assess its persuasiveness based on

several factors: (1) supportability; (2) consistency; (3) relationship with the claimant,

including the length, frequency, and purpose of the examination and any treatment

relationship; (4) specialization; and (5) other factors, such as the source's familiarity

with other evidence concerning the claim, that tend to support or contradict the

medical opinion. 20 C.F.R. § 416.920c(c). Supportability and consistency "are the

most important factors" in determining persuasiveness. 20 C.F.R. § 416.920c(b)(2).

As such, the ALJ must explain "how [he] considered the supportability and

consistency factors for [each] medical source's medical opinions." *Id.*

"Supportability" refers to whether the source's medical opinion finds support within

the "objective medical evidence" they cite. *Id.* § 416.920c(c)(1). "Consistency" is a

measure of how the medical opinion aligns with evidence from other sources

(medical and nonmedical). *Id.* § 416.920c(c)(2).

Turning to Violette's opinion, she completed a Mental Residual Functional

Capacity Questionnaire on June 29, 2021. (Tr. 1404-07). The questionnaire is a four-

page, check-the-box form in which Violette opined that Tolen had mild to moderate

limitations in the following domains: working in coordination with or in proximity

to others; responding appropriately to co-workers or peers; and maintaining personal

appearance and hygiene. (Tr. 1404-06). On the other hand, Violette opined that

Tolen had marked to extreme limitations in her ability to perform at production levels expected by most employers; respond appropriately to changes in work setting; remember locations, workday procedures, and instructions; maintain attention and concentration for more than brief periods of time; process subjective information accurately and to use appropriate judgement; be aware of normal hazards and take necessary precautions; and behave predictably, reliably, and in an emotionally stable manner. *Id.*

The ALJ found Violette's opinion partially persuasive, noting that her opinion as to the mild to moderate limitations were consistent with generally stable and normal findings on examination, Tolen's treatment history, and her activities of daily living, such as caring for her children, grandchildren, and elderly father, and performing personal care, shopping, and preparing simple meals. (Tr. 33). However, the ALJ found that Violette's opinion regarding Tolen's marked to extreme limitations were not supported by any written information or medical evidence of record, and were inconsistent with Tolen's normal exam findings, treatment history, and activities of daily living. (Tr. 33-34). The ALJ also noted that the last treatment record before Violette issued this June 2021 opinion, was September 2020. (Tr. 34, 1389).

Tolen argues that the ALJ's rationale as to Violette's opinion is not supported by substantial evidence because he broadly rejected a portion of Violette's opinion

without citation to the record. But contrary to Tolen's assertion, the ALJ's decision shows he considered Tolen's medical condition as a whole and there was no broad rejection of Violette's opinion. *See Edgecomb v. Comm'r of Soc. Sec.,* 841 F. App'x 142, 144 (11th Cir. 2020) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision was not a broad rejection that did not enable the court to conclude that the ALJ considered the claimant's medical condition as a whole.")). Indeed, the ALJ explicitly stated that "[a]fter careful consideration of the *entire* record, the undersigned finds that the claimant has the residual functional capacity to perform light work[.]" (Tr. 25) (emphasis added); *see also Id.* at 26 (noting he considered all Tolen's symptoms, as well as medical opinions and prior administrative medical findings).

This is further evidenced by the fact that prior to assessing Violette's opinion, the ALJ provided a thorough, eight-page discussion of all testimonial and medical evidence he relied upon in formulating the RFC. For instance, the ALJ found that Tolen's "debilitating allegations of difficulty remembering, interacting, concentrating, and adapting" were inconsistent with examination findings, treatment history with medication management, and activities of daily living. (Tr. 29). He cited to records showing that Tolen's memory, attention span, concentration, speech and language—including naming, comprehension, and repetition—were intact. (Tr. 896,

912, 1422, 1433, 1470, 1476, 1497, 1502, 1593, 1605, 1607). While the ALJ noted that after mini-mental status examination, Tolen was diagnosed with a mild cognitive impairment and predominance of short-term memory impairment, he considered Dr. Morris's February 2020 evaluation, which demonstrated Tolen was oriented times three; able to use decision making strategies, direct attention, read, and interact appropriately; and had no gross deficits in cognitive function or speech with intact short-term memory. (Tr. 30, 896, 1140-41). The ALJ noted that in July 2021, Tolen exhibited a normal mood and affect, as well as normal behavior, judgment, and thought content. (Tr. 1481). Finally, the ALJ discussed records and testimony showing she cared for her grandchildren, elderly father, and six dogs; manages her medications independently; prepares simple meals; shops; drives; attends football games and church; and uses her computer and listens to the radio on a daily basis (for four to five hours). (Tr. 30-32, 430, 458, 460, 550, 554, 558, 561, 1392, 1400, 1422, 1676). In sum, the ALJ made clear that he considered Tolen's medical condition as a whole and his analysis of Violette's medical opinion is supported by substantial evidence.

Next, Tolen argues that even though the ALJ found Dr. Bowman's opinion persuasive, the RFC fails to include the full extent of the functional limitations identified by Dr. Bowman. (Doc. 15 at 18-19). According to Tolen, nothing in the RFC accounts for Dr. Bowman's opinion that Tolen was mildly to moderately

limited in her ability to respond appropriately to usual work situations, or to regulate emotions, control behavior, and maintain well-being. *Id.* at 19. As a result, Tolen asserts there is no logical bridge between the ALJ's findings and the RFC. *Id.*

But Tolen ignores the fact that "[t]he assessment of a claimant's RFC is within the exclusive province of the ALJ." *Wolff v. Comm'r of Soc. Sec.*, No. 2:22-cv-177-SPC-NPM, 2023 WL 1971935, *6 (M.D. Fla. Jan. 27, 2023), *report and recommendation adopted*, 2023 WL 1967586 (Feb. 13, 2023) (citing 20 C.F.R. § 416.946(c); *accord Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's [RFC] is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive.")). Therefore, even where an ALJ has found a medical opinion to be persuasive, as here, the ALJ does not have to adopt a limitation from the opinion and incorporate into the RFC. *See, e.g., Sanders v. Comm'r of Soc. Sec.*, No. 2:20-cv-788-NPM, 2022 WL 970181, *6 (M.D. Fla. Mar. 31, 2022) ("And the regulations do not require ALJs to adopt into an RFC every part of an opinion that they otherwise find persuasive … Rather, the assessment of a claimant's RFC is within the exclusive province of the ALJ.") (citing 20 C.F.R. § 416.920c(a)); *K.T.B. v. Comm'r of Soc. Sec.*, No: 3:20-cv-110-MSH, 2021 WL 5906372, *2 (M.D. Ga. Dec. 14, 2021) ("Plaintiff provides no authority, however, for the proposition that merely because an adjudicator finds a source persuasive, he must accept it wholly and incorporate

into his RFC assessment any and all limitations that source suggests. To the contrary, the ALJ must only explain whether a source statement is persuasive considering its supportability in, and consistency with, the medical evidence as a whole.").

Tolen also takes issue with the ALJ's rejection of Dr. Morris's opinion that she cannot stand or walk for prolonged periods or lift more than five pounds. (Doc. 15 at 19). In doing so, Tolen asserts that the ALJ did not reasonably conclude that she can perform light-duty work because the record evidence shows ongoing cervical pain with radicular symptoms, i.e., weakness, numbness, tingling, and pain in both extremities, failing conservative treatments for symptoms, a left lumbar ROM that was limited in extension, and chronic pain syndrome. (Tr. 933, 1175). In evaluating Dr. Morris's opinion, the ALJ concluded that it was not persuasive because it was

> inconsistent with the findings on examination of 5/5 strength in the upper and lower extremities, 5/5 grip strength, normal and symmetric deep tendon reflexes, no gross deficits in sensation, and the claimant was able to perform heel/toe and squat maneuvers. In addition, the opinions are inconsistent with longitudinal imaging, generally normal and stable findings on examination, treatment history, and activities of daily living driving, caring for children, caring for grandchildren, caring for her elderly father, performing personal care, shopping, and preparing simple meals. This was a one-time evaluation performed earlier in the month from the claimant's cervical surgery and the claimant had improvement after surgery.

(Tr. 33, 578, 821, 896-97, 1125, 1141, 1229-31, 1239, 1241, 1476, 1607, 1614-16, 1629-65).

Tolen cites to evidence in the record that may tend to corroborate Dr. Morris's opinion. But under a substantial evidence standard, this will not suffice. A claimant "must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion." *See Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017); *see also Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) ("[T]he mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings."). Ultimately, the ALJ explained that Dr. Morris's opinion was unsupported and inconsistent with the record. This is all that is required. *See Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, *3 (M.D. Fla. Apr. 6, 2021) ("the ALJ's analysis is directed to whether the medical source's opinion is supported by the source's own records and consistent with the other evidence of record[.]"). So the court must decline Tolen's invitation to reweigh the evidence.

Tolen's argument regarding Dr. Kasprzak fares no better. Tolen places great emphasis on Dr. Kasprzak's opinion that Tolen may have been malingering during the examination—arguing that it is considered "poor practice" for Dr. Kasprzak to use the Structured Inventory of Malingered Symptomatology (SIMS) as it does not differentiate malingerers from patients with legitimate concerns. (Doc. 15 at 22-23). Citing to the Program Office Manual System (POMS) DI 22510.006(D), Tolen also

contends that an ALJ should not include, as part of his final determination, any findings or conclusions about potential malingering. *Id.* at 23. At bottom, Tolen asserts that the ALJ's reliance on Dr. Kasprzak's opinion is not a reasonable basis for his finding of no disability. *Id.* at 24.

However, the ALJ did not rely upon Dr. Kasprzak's opinion about malingering nor did he find it persuasive. Rather, the ALJ stated that he was persuaded by Dr. Kasprzak's opinion that Tolen "is likely to possess the requisite skills and cognitive capacity to manage finances independently of others." (Tr. 33, 1413). The ALJ noted that this finding was supported by Dr. Kasprzak's examination and was consistent with generally stable and normal findings on examination, treatment history, and activities of daily living. (Tr. 33). And because Tolen does not challenge this portion of the ALJ's findings, she fails to establish any error.

Finally, Tolen claims that the ALJ's failure to consider her chronic pain syndrome and his mischaracterization of her activities of daily living generated deficient reasons for discounting her subjective complaints about her mental limitations. Tolen therefore argues that remand is necessary because her statements about her chronic pain and mental impairments are patently consistent with the medical record. (Doc. 15 at 20-22). This argument is unavailing.

To begin with, Tolen challenges the ALJ's opinion that her "high level of daily activities does not support limitations of function consistent with an inability

to perform all work," arguing that listening to the radio, watching television, or possessing a driver's license proves nothing about functioning at a "high level." (Doc. 15 at 21). In making this argument, however, Tolen trivializes the extent of her activities as she does far more than just these activities. The ALJ's analysis reveals an expansive number of reported daily activities: caring for grandchildren, elderly father, and six dogs; managing her medications independently; performing personal care; preparing simple meals; driving (and has a driver's license); shopping for groceries; attending church and football games; and watching television and using the computer on a daily basis (for several hours). (Tr. 430, 458, 460, 550, 554, 558, 561, 1392, 1400, 1422, 1676). The ALJ found that even if Tolen's daily activities were as truly limited as alleged, "it is difficult to attribute the degree of limitation to [Tolen's] medical conditions, as opposed to other reasons, in view of the relatively benign medical evidence and other factors discussed." (Tr. 32). Although not dispositive, a claimant's activities may show that her symptoms are not as limiting as alleged. *See* 20 C.F.R. § 416.929(c)(3)(i); *see also Dyer*, 395 F.3d at 1210; *Stacy v. Comm'r, Soc. Sec. Admin.*, 654 F. App'x 1005, 1011 (11th Cir. 2016).

Furthermore, the ALJ did not unduly rely on Tolen's activities in deciding her claim, nor did the ALJ find her activities to be dispositive evidence of her ability to work. Instead, the ALJ properly considered Tolen activities together with the other

evidence in accordance with the regulations. On the whole, the ALJ's characterization of Tolen's daily activities is supported by substantial evidence in the record, even if Tolen does not believe it's the most favorable characterization. *See Carr v. Comm'r of Soc. Sec.*, No. 22-12989, 2024 WL 94149, *3 (11th Cir. Jan. 9, 2024). Thus, the ALJ did not err.

The same is true for Tolen's alleged chronic pain syndrome. As discussed above, Tolen's CPS does not qualify as an impairment under the regulations. *See* 20 C.F.R. § 416.909. Nevertheless, the ALJ still considered Tolen's chronic pain (a non-severe impairment) when formulating the RFC, which is supported by substantial evidence.

## III.    Conclusion

Upon consideration of the submissions of the parties and the administrative record, substantial evidence supports the ALJ's decision, and there was either no error or no harmful error in the ALJ's application of the correct legal standards. Accordingly, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g), and the clerk is directed to enter judgment in the Commissioner's favor, terminate all scheduled events, and close the case.

**ORDERED** on March 10, 2025

NICHOLAS P. MIZELL
United States Magistrate Judge